[No. 23316.    Department One.    December 14, 1931.]

GRAYS HARBOR FINANCE Co., *Respondent*, v. A. G. SUTCLIFF *et al., Appellants.*[1]

*Geo. D. Abel,* for appellants.

*Clark W. Adams,* for respondent.

BEELER, J.—This is a replevin action brought by the respondent to repossess a Ford coupe automobile. The respondent in its complaint alleged it had purchased the car from one Lester Jauch on July 12, 1930, and thereby became the owner thereof. This allegation was denied by the appellant in its answer, and it affirmatively alleged that one H. J. Williams purchased the car from Jauch on July 12, and that he was the owner thereof, and that on July 14, 1930, it loaned to Williams the sum of $369, secured by a chattel mortgage on the car, which was filed for record with the county auditor of Grays Harbor county, Washington. The reply placed in issue the affirmative matters contained in the answer.

A trial to the court without a jury resulted in findings that the respondent was the owner of the car, and, the car having been disposed of by the appellant be-

[1] Reported in 5 P. (2d) 1002.

fore the trial, a money judgment was rendered against the appellant for its value, from which judgment this appeal was taken.

The facts may be briefly summarized: Some time prior to July 12, 1930, Jauch purchased the Ford coupe under a conditional sale contract from the Aberdeen Motors, which contract was held by the Coast Credit Company, of Olympia, Washington, and filed for record with the county auditor of Grays Harbor county. Jauch, being in arrears on the installment payments of his contract, became fearful that the Coast Credit Company might declare a forfeiture and repossess the car, and consequently, at about four o'clock on the afternoon of Saturday, July 12, 1930, applied to A. J. Brockmole, business manager of the respondent, to refinance his contract. While Brockmole refused to refinance the contract, he did accompany Jauch, who took the car to Williams, a used-car dealer and a subtenant of Brockmole, to have it appraised. Williams appraised the car at $375, and thereupon Brockmole, acting for the respondent, agreed to purchase Jauch's equity for one hundred dollars, twenty-five dollars to be paid in cash, and seventy-five dollars within thirty days to be evidenced by a promissory note, and the respondent further agreed to pay the balance due the Coast Credit Company under the conditional sale contract, amounting to the sum of $264.10.

Being late Saturday afternoon, the respondent's place of business was closed, and Brockmole was about to leave the city of Aberdeen on a business trip. Jauch was desirous of closing the deal at once, and to facilitate matters, Brockmole gave Williams twenty-five dollars in cash, and the latter gave his personal check to Jauch for that amount, and at the same time Brockmole handed Williams the further sum of $264.10 in cash, and directed him to send his personal check for

that amount to the Coast Credit Company at Olympia, in payment of the balance due on the conditional sale contract. Immediately thereupon, Brockmole · took possession of the car and placed it in his repair shop.

After Brockmole departed, Jauch executed a bill of sale for the car with the name of the purchaser left blank, and left it with Williams for delivery to Brockmole on his return. Some time between Saturday, July 12, and Monday, July 14, Williams stenciled his name in the bill of sale as purchaser, and on July 14 procured a loan of $369 from the appellants, and gave them a chattel mortgage on the car as security. At the time the loan was made and the chattel mortgage taken, Williams did not have possession of the car, and the original conditional sale contract was still *unsatisfied and of record* with the county auditor of Grays Harbor county.

On July 16, 1930, the Coast Credit Company executed a release of the conditional sale contract and a bill of sale to Jauch, both of which instruments reached Jauch, who, in turn, apparently on August 6, 1930, at the time the respondent paid the seventy-five dollars to Jauch, as required by its promissory note, delivered them to Brockmole.

It is obvious that the appellants were willing to make the deal on the strength of the bill of sale produced by Williams and in which he was named as the purchaser.

We have frequently applied the rule, when the facts and circumstances warranted its application, that, where one of two innocent persons must suffer from the fraud perpetrated by another, the loss should be borne by the one whose carelessness or negligence enabled the fraud to be perpetrated. This rule, however, presupposes the absence of fault on the part of the one

who invokes it. Were the appellants free from fault when they made the loan to Williams? We think not.

An examination of the official records would have disclosed an outstanding conditional sale contract. The appellants loaned the money to Williams and took a chattel mortgage on the car at a time when the record title to the car stood in the name of another. They were chargeable with knowledge of the defects in Williams' apparent title to the automobile, and the duty was upon them to examine the county records or to otherwise satisfy themselves as to the source of his apparent title. The truth of the matter is that appellants were satisfied, apparently because of previous dealings with Williams, to rely wholly upon his oral representations as to the ownership of the car. In this instance, they did so at their peril.

"Public policy requires that purchasers of property should be vigilant and cautious, at least to the extent of seeing that their vendors have some and the usual evidence of title, and if they are content to rest upon their declarations they may not impose the loss, which is the result of their own incautiousness or credulity, on another." *Barnard v. Campbell,* 55 N. Y. 456, 14 Am. Rep. 289.

The issue raised by the pleadings and the proof in this case was whether Williams or the respondent purchased the car from Jauch on July 12, 1930, and in our opinion, the trial court correctly found that the respondent purchased the car and became the owner thereof.

"It is a fundamental doctrine of the common law that in general no one can transfer a better title to a chattel than he himself possesses. 1 Mechem on Sales, § 154. The universal and fundamental principle of our law is that no man can be divested of his property without his own consent and consequently even an honest purchaser under a defective title cannot hold

against the true proprietor.'' *Pelton Water Wheel Co. v. Oregon Iron & Steel Co.,* 87 Oregon 248, 170 Pac. 317.

The judgment appealed from is affirmed.

PARKER, MITCHELL, and MILLARD, JJ., concur.

TOLMAN, C. J., dissents.